UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CORTEZ REED                                                                                    PLAINTIFF
#661395

V.                                      No. 5:19CV00135-DPM-JTR

MARK GOBER, Sheriff,
Drew County, *et al.*                                                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States Chief District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Cortez Reed ("Reed") filed this *pro se* § 1983 Complaint and Amended Complaint alleging that Defendants violated his constitutional rights while

he was a pretrial detainee in the Drew County Jail ("DCJ"). *Docs. 2 & 6*.[1] Before Reed may proceed with this case, the Court must screen his claims.[2]

## II. Discussion

Reed alleges that, for four weeks, he requested DCJ employees to repair a light in his cell. Eventually, "they" came in and put tape around the exposed wires, presumably in an effort to fix the problem with the light.

On March 14, 2019, two other inmates allegedly broke a water sprinkler and flooded Reed's cell. Reed said he "felt a slight shock" when the water hit his feet and, ten minutes later, he and his cellmate were moved to another cell. *Doc. 2 at 4 & 6; Doc. 6 at 4.*

Reed also alleges that, on March 2 and 14, 2019, he asked a John Doe Defendant, who worked as a "transporter and maintenance" officer at the DCJ, to take him to the doctor because he had "heart problems" and had gotten "sick" from

---

[1]The Court has read Reed's *pro se* Complaint and Amended Complaint, together, as constituting his claims. *See Kiir v. N.D. Pub. Health,* 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint); *Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

[2]The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Reynolds v. Dormire,* 636 F.3d 976, 979 (8th Cir. 2011).

mold in the shower. This John Doe Defendant "took his time" and failed to take Reed to the doctor. Reed states that, on March 15, 2019, he was transferred to the Ashley County Detention Center ("ACDC"), where he received medical attention for chest pains and high blood pressure. *Doc. 2 at 2, 4 & 6; Doc. 6 at 2, 4 & 6.*

Reed seeks compensatory damages for his "pain and suffering" resulting from Defendants' "not doing their job [to] fix things [and] take [him] to a doctor." Although Reed has only named Defendants in their *official capacity,* the Court has liberally construed his claims as also seeking damages from Defendants, in their individual capacity. *See Doc. 2 at 2, 4-6; Doc. 6 at 2, 4-6.*

A. **Reed's Official-Capacity Claims**

As a matter of law, Reed's "official capacity" claims against Defendants must be construed as claims against Drew County. *Brewington v. Keener,* 902 F.3d 796, 800 (8th Cir. 2018). Drew County cannot be held vicariously liable, in a § 1983 action, for the acts of its employees. *Id.* at 800-01 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). Instead, it can only be held liable if its policies, customs, and practices caused Reed's injury. *Brewington,* 902 F.3d at 801-02; *Corwin v. City of Independence, Missouri,* 829 F.3d 695, 699-700 (8th Cir. 2016).

Because Reed does not allege that a Drew County policy, custom or practice caused his injury, he has failed to plead viable official-capacity claims against

3

Defendants. Accordingly, those claims should be dismissed.

### B. Reed's Conditions of Confinement Claims Against Defendants, in Their Individual Capacity

Liberally construed, Reed alleges only that "someone" inadequately repaired the light fixture in his cell, and it caused him to experience a brief "shock" when his cell was later flooded by other prisoners. It appears Reed believes these facts are sufficient to support an unconstitutional conditions of confinement claim.

To plead a viable § 1983 claim, based on allegedly unconstitutional conditions of confinement, Reed must allege facts demonstrating that: (1) objectively, there was a "substantial risk of serious harm" to his health or safety; and (2) subjectively, Defendants were "deliberately indifferent" to that risk.[3] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official is "deliberately indifferent" only when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Moreover, because supervisors cannot be held vicariously liable, in a § 1983 action, for the constitutional violations of their subordinates, a plaintiff must plead

---

[3]The Eighth Circuit applies the same "deliberate indifference" standard to conditions of confinement and inadequate medical care claims whether brought by pretrial detainees, under the Fourteenth Amendment, or by convicted prisoners, under the Eighth Amendment. *See Davis v. Oregon County,* 607 F.3d 543, 548 (8th Cir. 2010).

4

that "each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Iqbal,* 556 U.S. at 676 (emphasis added). "[T]hat harm occurred under [a jail supervisor's] watch is not the touchstone under § 1983." *Marsh v. Phelps County,* 902 F.3d 745, 754 (8th Cir. 2018). Liability under § 1983 requires a showing of "personal involvement in, or direct responsibility for, a deprivation of [the plaintiff's] constitutional rights." *Id. (*quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)).

Negligence, even gross negligence, is insufficient to establish liability under the Eighth or Fourteenth Amendment. *See Farmer*, 511 U.S. at 838 (an "official's failure to alleviate a significant risk that he should have perceived but did not ... cannot under our cases be condemned as the infliction of punishment" under the Eighth Amendment); *Daniels v. Williams*, 474 U.S. 327, 328, 332-33 (1986) ("[t]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property," and its protections are not "triggered by lack of due care by prison officials" or "merely because the defendant is a state official").

Because Reed's Complaint contained *no* factual or legal allegations against Defendants Drew County Sheriff Mark Gober ("Gober"), Head Jailer Sewzan Pots ("Pots") or Chief Deputy Brian Slaughter ("Slaughter"), the Court expressly ordered him to file an Amended Complaint "explaining … how each of the named

5

Defendants … *personally participated* in violating his constitutional rights." *Doc. 4 at 2-3*. Despite this clear instruction, Reed's Amended Complaint still fails to explain how Gober, Pots and Slaughter were personally involved in, or responsible for, the conditions that allegedly resulted in him being briefly shocked. *See Doc. 6 at 4-6*. Thus, nothing in Reed's pleadings suggests that *any* of the named Defendants were aware of, and deliberately disregarded, a substantial risk of harm to his safety.

More importantly, Reed's allegations, at most, suggest that an unknown and unnamed Defendant may have been *negligent* in repairing the light fixture, which resulted in Reed being "shocked." Because negligence does not rise to the level of a constitutional violation, Reed has failed to state a viable § 1983 claim for relief based on the inadequately repaired fixture.

Accordingly, the Court recommends that Reed's conditions of confinement claim against Defendants Gober, Pots and Slaughter be dismissed, without prejudice, for failing to state a claim upon which relief may be granted.

### C.  Reed's Denial of Medical Care Claim Against Defendant Doe, in His Individual Capacity

Reed alleges that, on March 2 and 14, 2019, Defendant Doe refused to take him to the doctor for "heart problems" and being "sick" from mold at the DCJ. According to Reed, on March 15, he was transferred to the ACDC, where he received medical attention for chest pains and high blood pressure. Although the Court directed Reed to file an Amended Complaint detailing the symptoms he was

experiencing at the DCJ and how he was harmed by any delay in seeing a doctor for those symptoms, he failed to correct this pleading deficiency in his Amended Complaint and provided none of the relevant facts the Court directed him to include in that pleading. *See Doc. 4 at 2-3; Doc. 6 at 4.*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To plead a viable denial of medical care claim, Reed must allege facts establishing that: (1) he had "objectively serious medical needs"; and (2) subjectively, Defendant Doe "actually knew of but deliberately disregarded those needs." *Hamner v. Burls,* 937 F.3d 1171, 1177 (8th Cir. 2019).

A medical need is objectively serious if it has been "'diagnosed by a physician as requiring treatment' or if it is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Barton v. Taber,* 908 F.3d 1119, 1124 (8th Cir. 2018). When an inmate alleges that a delay in medical treatment has violated his constitutional rights, the "objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005); *see Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 2001) (a prisoner must demonstrate that the delay in obtaining

medical treatment adversely affected his prognosis, or that defendants ignored an acute or escalating situation).

Under the subjective component of a deliberate-indifference claim, prison guards may not "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle,* 429 U.S. at 104-05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minnesota,* 557 F.3d 628, 633 (8th Cir. 2009). Finally, the prisoner "must show more than negligence, more even than gross negligence, to make out a constitutional violation." *Hamner,* 937 F.3d at 1177; *see Roberts v. Kopel,* 917 F.3d 1039, 1042 (8th Cir. 2019) (deliberate indifference requires a mental state "akin to criminal recklessness").

Reed provides no facts suggesting that a physician or other medical professional had previously diagnosed him as suffering from heart problems or high blood pressure. Additionally, nothing in Reed's conclusory allegations suggests that he was exhibiting symptoms so severe that his need for immediate medical attention would be obvious to a layperson, such as Defendant Doe, a "transporter and maintenance" officer. Nor does Reed allege that Defendant Doe ignored an acute or escalating medical condition or that Reed's prognosis was adversely affected by the at most two-week delay in him receiving medical treatment. Finally, Reed's vague

allegations about feeling "sick" from exposure to mold in the shower are not sufficient to establish that he suffered from an objectively serious medical need that Doe intentionally and deliberately disregarded.

As a matter of law, Reed's vague and conclusory allegations about a two-week delay in receiving medical attention for alleged heart problems and exposure to mold (which the Court directed him to cure in an Amended Complaint which he filed without providing any of the requested facts) do *not* rise to the level of a constitutional violation. *See Iqbal,* 556 U.S. at 678 (explaining that "labels and conclusions" and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to plead a § 1983 claim; instead, a prisoner must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face"). Accordingly, the Court recommends that Reed's denial of medical care claim against Defendant Doe be dismissed, without prejudice, for failing to state a claim upon which relief may be granted.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Reed's Complaint and Amended Complaint (*Docs. 2 & 6*) be DISMISSED, WITHOUT PREJUDICE.

2. The dismissal of this case count as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 7th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE